P. W. ELDRIDGE *v.* THE STATE.

1. BILL OF EXCEPTIONS.— The allegations of a bill of exceptions should be full and explicit, so that the matters brought to this court for revision may be comprehensible without recourse to inference.
2. CONTINUANCE.— The unauthorized departure of a material witness in the course of the trial and before his examination is such surprise as to warrant an application for a postponement or continuance.
3. NEW TRIAL.— Artifice, trickery and fraud on the part of prosecuting officers, whereby the defendant was inveigled into trial unprepared, have been held ground for reversal of his conviction.
4. CONTINUANCE — NEW TRIAL.— In a case of hog-theft the defendant was refused a continuance and also a postponement asked for the purpose of obtaining absent witnesses who, he alleged, would testify to his claim of ownership of the hog and to the fact that he openly took and appropriated it in a public place and manner, and their testimony was obviously important on the issue of guilty intent. *Held*, in view of the unsatisfactory state of the proof, that a new trial should have been granted.

APPEAL from the County Court of Brown.   Tried below before the Hon. J. STEWART CLEVELAND, County Judge.

Appellant and Daniel Eldridge, his brother, were charged by information with the theft of a hog worth seven dollars, belonging to Burrell Ethridge, on December 21, 1881. The cause came to trial on April 3, 1882, when the county attorney dismissed the prosecution as to Daniel Eldridge. Appellant moved for a continuance on account of the absence of John Smith and Ed. Arlege, citizens of Comanche county. The motion was overruled. It appears by the bill of exceptions that before the jury were impaneled the defense discovered that Daniel Eldridge, who was then qualified to testify by the dismissal of the charge against him, had disappeared from the court room. Alleging that his testimony was important, the defense orally moved for a postponement until he could be produced. Thereupon the county attorney announced that if the defendant would waive the motion and proceed to trial he might use the written testimony of Daniel Eldridge taken before the examining court. Afterwards the defense discovered that there was no such evidence, but the court required that the trial should proceed, and the defense reserved exceptions to the overruling of the motions and to the requirement that the trial should proceed.

Burrell Ethridge, for the State, testified that on December 21, 1881, he owned a sandy spotted barrow about a year and a half or two years old. It was in the earmark of John Spencer, from whom witness got it in exchange for another hog. On the day already mentioned witness saw the defendant have the carcass of the hog at the Patton spring, in Brown county. Defendant said it was his hog and that he had killed it. The defendant and his brother were dressing the hog at the Patton spring. About a month prior to that time the defendant was at witness's house, and they had some conversation about some hogs the defendant had purchased from John Spencer. Witness told the defendant that he, the wit-

ness, had a sandy spotted hog in the John Spencer mark, and the defendant said that he knew witness's hog. Eb Ward was present when this conversation passed between witness and the defendant. Witness never gave his consent that the defendant or any one else should take the hog.

On his cross-examination the witness stated that it was in the day-time he saw the defendant have the hog at Patton's spring, and there were four or five persons present. Patton's house was only forty or fifty steps off. Defendant claimed the hog as one he had bought from John Spencer. Witness and John Spencer were brothers-in-law, and they had lived together in the preceding fall. John Spencer got a wagon and moved away that fall or early in the winter. He had a bunch of hogs in the same mark as the spotted barrow, which the defendant told witness he had bought from Spencer.

Eb Ward, for the State, testified that on December 21, 1881, he saw the defendant's brother dragging from the woods, down to Patton's spring, a sandy spotted barrow. Soon afterwards the defendant came and claimed the hog as one he had purchased from John Spencer, and said that he had killed it. Witness told the defendant that the hog was Burrell Ethridge's, and went to Ethridge's house to tell him, but, not finding him at home, returned to the spring and there found Ethridge, who had come during witness's absence. Both Ethridge and the defendant claimed the hog, but the latter took it. Witness knew the hog to be Ethridge's, and it was generally known in the neighborhood to be his. About a month before the hog was killed witness heard a conversation between defendant and Ethridge, at the latter's house, in regard to some hogs which defendant claimed to have bought of John Spencer. Ethridge told defendant that he, Ethridge, owned a sandy spotted barrow which was in John Spencer's mark, and defendant replied that he knew Ethridge's barrow.

Cross-examined, the witness said there were four or five persons present at the spring on the occasion of which he spoke. It was in the day-time and the spring was quite a public place, and close to Hatton's house.

—— Arledge, for the State, testified that one day in December, 1881, he and his brother were cleaning two hogs at Patton's spring, when the defendant and his brother came there. Defendant said that there was a hog of his out there, and he believed he would kill it for meat. Defendant and Dan Eldridge, his brother, went off, but soon returned, the latter dragging a hog. Defendant claimed it as one he had bought from John Spencer, and he and his brother proceeded to scald and scrape it. Defendant knew witness was there before he, the defendant, brought the hog there. Mr. Patton, Eb Ward and Burrell Ethridge came afterwards. The latter claimed the hog, and he and defendant had some words about it. Defendant made no effort to conceal the hog, but, after cleaning it, took it off toward his house, some two miles distant.

G. W. Patton, for the State, testified that Daniel Eldridge, the defendant's brother, brought the hog to witness's spring, and said it belonged to the defendant, who came soon afterwards. Burrell Ethridge rode up directly and saw and claimed the hog. Defendant also claimed it, and he and Ethridge had quite a dispute. Witness did not know the hog. It was a dark spotted or sandy spotted hog.

Mrs. P. W. Eldridge, wife of the defendant, was a witness in his behalf and testified that, in the fall of 1881, John Spencer came to defendant's house and sold to defendant all of his, Spencer's, hogs, and also the hog-mark. The hogs were on the range. Defendant paid Spencer in a wagon. Spencer lived with Burrell Ethridge, about two miles from the defendant, and the latter asked Spencer if Ethridge had any claim on the hogs or

the mark.    Spencer told the defendant that Ethridge had no claim on any of the hogs or on the mark.    Defendant got all Spencer's hogs, a colt, and a gun in payment for the wagon.

M. N. Eldridge testified for the defense to the same effect as the defendant's wife, and added that Spencer moved off in the wagon he got from the defendant.    The hog referred to by Burrell Ethridge was one of those sold by Spencer to defendant.    On cross-examination it appears that the witness had never seen the hogs, nor heard Spencer describe the hog in question.

No brief for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

White, P. J.    It is shown by the 2d bill of exceptions that Dan Eldridge, who was an important witness for defendant, and who had left the court room after the application of defendant for continuance was overruled, being still absent when the case was about to proceed to trial, defendant asked a further postponement or a continuance until the next term of court in order to procure the attendance of said absent witness.    This application for postponement was not reduced to writing, because the county attorney agreed if defendant would waive his motion and go into trial the evidence of the absent witness Dan Eldridge, as taken before the examining court, might be read in evidence in behalf of defendant.    Believing the evidence was with the papers of the case, appellant's counsel consented.    Afterwards it was ascertained " that there was no such evidence, and the court compelled defendant to go into trial without such evidence."

We confess that the bill of exceptions is very unsatisfactory.    We would perhaps be warranted in inferring from the language used that, after it was discovered that no

such evidence existed, the defendant renewed his motion, and that the court overruled the same and "compelled him to go into the trial without such evidence." If such were the facts, then they should have been clearly stated, and not left to inference. Again, from the language used the inference might be legitimate that the county attorney, knowing no such evidence existed, had practiced a fraud and deceit upon the defendant by leading him to believe otherwise. If such was the case, then the statement should have been unequivocal to that effect, and further that the fraudulent representations thus made were relied on by the defendant. It should also have been shown that the fraud perpetrated could not have been anticipated or averted by the use of reasonable diligence. The unauthorized withdrawal of a material witness after the commencement of trial has always been held ground of surprise sufficient to base an application for postponement or continuance. *Cotton* v. *State,* 4 Texas, 260.

In civil cases,— and the rule we imagine is the same in criminal,— is that "the continuance of a case after the trial has begun, on account of the withdrawal of a material witness, is largely within the discretion of the court." *Wiggins* v. *Fleishel,* 50 Texas, 57. Moore, C. J., says in this last case, "it is neither the duty of the court nor of the opposite party to advise or assist one in the preparation of his case, or to relieve him from the consequence of his oversight and blunders. Indeed the court should not do so unless it is apparent that its refusal to interfere would result in the doing of injustice or in permitting an undue advantage to be gained by the one party over the other, or in sanctioning trickery or fraud."

Artifice, trickery and fraud of prosecuting officers, whereby a defendant has been induced to go to trial to his injury, have been held good grounds of reversal and for new trial. *March* v. *State,* 44 Texas, 64, and authorities cited. Our statute with regard to continuances

after trial commenced provides that "a continuance may be granted on the application of the State or defendant after the trial has commenced, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial commenced, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had; or the trial may be postponed to a subsequent day of the term." Code Crim. Proc. art. 526; *Hodde* v. *State*, 8 Texas Ct. App. 382.

Defendant's bill of exceptions should have been more full and explicit in stating all that would tend to make the matter complained of thoroughly understood. As above stated, our inferences that a gross wrong was perpetrated might be just and reasonable, and yet not in accordance with the truth or facts of the matter. In this state of uncertainty, we cannot say that the court erred in the ruling complained of.

We are, however, of opinion that the inculpatory evidence is just of that unsatisfactory and meager character that a new trial should have been granted in order that defendant might have had an opportunity to meet and overcome it, entirely if he could do so, by the testimony of the witnesses for whom his continuance was sought and the one for whom a postponement was desired.

Because the court erred in not granting a new trial, the judgment is reversed and the cause remanded.

*Reversed and remanded.*